## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**JOHN BECKER and JOAN BECKER**
148 Monroe Street, #201
Rockville, Maryland  20850

**STANLEY J. SERSEN**
730 South Ellwood Ave.
Baltimore, Maryland  21224

**ENVIRONMENTAL DESIGN &
  RESOURCE CENTER, LLC**
730 South Ellwood Ave.
Baltimore, Maryland  21224

**ARCHITECTURAL SUPPORT
  GROUP, INC.**
730 South Ellwood Ave.
Baltimore, Maryland  21224

                    Plaintiffs

v.

**PAUL HOWE NOE, II**
aka Paul B. Delanoe
aka Paul Boaventura-Delanoe
354 White Cap Ln
Newport Coast, CA  92657-1091

**LICIA B. NOE**
aka Licia Boaventura-Delanoe
In Her Personal Capacity and as
Trustee of the Bellagio Trust
354 White Cap Ln
Newport Coast, CA  92657-1091

**JULIA OTEY**
15030 Victory Blvd, Unit 101
Van Nuys, CA  91411-1823

Case No.: _____

**RAOUL HAMILTON**
29623 Serenity Ln
Murrieta, CA  92563-5868
  or
143 W. Vernon Ave.
Los Angeles, CA  90037-2713

**ECO-GEN ENERGY, INC.**
7247 Hayvenhurst Avenue, #A-6
Van Nuys, California  91406
<u>Serve</u>:  Julia Otey, Agent for Service of Process
7247 Hayvenhurst Avenue, #A-6
Van Nuys, California  91406

**RALPH WARREN**
48010 Woodsong Place
Sioux Falls, SD  57108

and

**OPERATING EXPENSE**
   **CONSULTING, LLC**
48010 Woodsong Place
Sioux Falls, SD  57108
<u>Serve</u>: Ralph Warren, Registered Agent
48010 Woodsong Place
Sioux Falls, SD  57108

                         Defendants

## <u>COMPLAINT</u>

Plaintiffs John Becker and Joan Becker, Stanley J. Sersen, Environmental Design & Resource Center, LLC, and Architectural Support Group, Inc., by their undersigned attorneys, sue Defendants Paul H. Noe, Licia B. Noe in her personal capacity and as trustee of the Bellagio Trust, Julia Otey, Raoul Hamilton, Eco-Gen Energy, Inc., Ralph Warren, and Operating Expense Consulting, LLC, and state as follows.

**Nature of the Action**

1.     This action concerns the Defendants' conspiracy to defraud Plaintiffs by inducing them to purchase a so-called hybrid electric generator, also known as a "JouleBox," and to purchase stock in Eco-Gen Energy, Inc.  According to the Defendants' fraudulent claims, the JouleBox – without using any external power source – can generate more electrical output than is required to power it, so that it can power itself while producing surplus electricity.  The JouleBox does not work as the Defendants claim.

**Parties, Jurisdiction, and Venue**

2.     John Becker and Joan Becker (the "Beckers") are husband and wife and Maryland residents.

3.     Stanley J. Sersen ("Sersen") is a Maryland resident and was at all relevant times a member of Environmental Design & Resource Center, LLC, and a shareholder and officer of Architectural Support Group, Inc.

4     Environmental Design & Resource Center, LLC ("EDRC") was at all relevant times a Maryland limited liability company.  EDRC filed articles of cancellation in 2017, but, pursuant to Md. Code Ann., Corps. & Assoc. § 4A-908, it continues to exist for the purpose of pursuing its claims against Defendants.

5.     Architectural Support Group, Inc. ("ASG") was at all relevant times a Maryland corporation.  ASG was voluntarily dissolved in 2017, so, pursuant to Md. Code Ann., Corps. & Assoc. § 3-410, Mr. Sersen became a trustee of the assets of ASG, including ASG's claims against Defendants.

6.      Paul Howe Noe, II, also known as Paul B. Delanoe and Paul Boaventura-Delanoe ("Paul Noe"), is a California resident, and an officer, owner, and board member of Eco-Gen Energy, Inc.

7.      Licia B. Noe, also known as Licia Boaventura-Delanoe ("Licia Noe"), is a California resident, a member of Eco-Gen's "board of technology advisors," and trustee of the Bellagio Trust, which owns and licenses to Eco-Gen Energy, Inc. the purported intellectual property for the JouleBox.  Paul Noe and Licia Noe are husband and wife.

8.      Eco-Gen Energy, Inc. ("Eco-Gen") is a Nevada corporation with its principal office in California.

9.      Raoul Hamilton is a California resident and an officer of Eco-Gen.

10.     Julia Otey is a California resident and an officer of Eco-Gen.

11.     Operating Expense Consulting, LLC ("OPEX") is a limited liability company organized under South Dakota law, with its principal office in South Dakota.

12.     Ralph Warren is a South Dakota resident, the managing member of OPEX, and a certified public accountant licensed in the State of South Dakota.

13.     Starting in 2009 and continuing to the present day, the Defendants have constituted an associated-in-fact enterprise (the "Enterprise") and have conspired to perpetrate, and have in fact perpetrated, a scheme to defraud Plaintiffs through a litany of illegal acts, including mail fraud, wire fraud, interstate transportation of fraudulently acquired money and securities, and inducement of interstate travel in furtherance of a scheme to defraud.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, namely 18 U.S.C. § 1961, *et seq*., and 18 U.S.C. §§ 1341, 1343, and 2314.  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because this is a suit between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.  This Court has subject matter jurisdiction over Plaintiffs' state law claims because they arise out of the same case or controversy as Plaintiffs' federal law claims and involve a common nucleus of operative facts.

15.     This Court has personal jurisdiction over all Defendants, because they conspired to defraud Plaintiffs, the Defendants could reasonably expect their conspiracy to lead to consequences in Maryland, at least one of the Defendants committed overt acts in furtherance of the conspiracy, and those acts are of a type which subject all of the Defendants to personal jurisdiction under Maryland's long-arm statute.  OPEX and Eco-Gen committed overt acts in furtherance of the Defendants' conspiracy and transacted their affairs in Maryland, namely, OPEX engaged John Becker as its sales representative in Maryland, OPEX contracted to deliver a JouleBox to EDRC and ASG in Maryland and consented to personal jurisdiction in Maryland in the Lease Purchase Agreement described in this Complaint, and Eco-Gen sold stock to the Beckers and Sersen in Maryland.  Those overt acts are attributable to the other co-conspirators and subject them to personal jurisdiction in Maryland.  *See* 18 U.S.C. § 1965(b) and (d); *Cawley v. Bloch*,

544 F. Supp. 133, 135, (D. Md. 1982); *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 129, 892 A.2d 479, 486 (2006).

16.     This judicial district is the proper venue for this action pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims in this action occurred in this district.  Venue is also proper in this District under 18 U.S.C. § 1965.

## Facts Common to All Counts

17.     This is a civil action brought by Plaintiffs pursuant to the provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, concerning a pattern of racketeering activity perpetrated by the Enterprise.

18.     Starting in 2009 and continuing to the present day, the Defendants have conspired to perpetrate, and have in fact perpetrated a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use a spurious security or other article, through a litany of illegal acts, including mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), receipt of interstate transfers of money taken by fraud (18 U.S.C. § 2314), and inducement of interstate travel by a victim of fraud (18 U.S.C. § 2314).

19.     At the heart of the Enterprise is the so-called hybrid electric generator, also referred to by the Enterprise as the JouleBox.  According to the Enterprise, the JouleBox uses a unique combination of intellectual property and technology that enables it to generate more electrical output than is required to power it.  The Enterprise's claims

about the JouleBox are filled with meaningless jargon and accompanied by technical drawings and calculations that appear credible to a layperson.  For example, the Enterprise describes the JouleBox as being powered by solar panels or wind turbines, but the Enterprise has admitted elsewhere that the solar panels and turbines serve no functional purpose and are included solely for the purpose of supporting the Enterprise's claim that a purchaser of a JouleBox would be eligible for renewable energy tax credits.

20.     As a money-making scheme, the Enterprise used a two-fold strategy comprised of collecting cash deposits on contracts to sell non-existent JouleBoxes, and selling stock in Eco-Gen to unsuspecting investors.  The Enterprise was a classic Ponzi scheme, with prospective purchasers being offered special terms as "early adopters," which would enable them to earn commissions on later sales.

21.     The Enterprise engaged in mail fraud, wire fraud, and other illegal acts to cloak their scheme with indicia of legitimacy, by forming and registering Eco-Gen and OPEX with the Secretaries of State in Nevada, California, and South Dakota, securing trademark registration for the name JouleBox, filing a patent application for the hybrid electric generator, drafting and issuing a private placement memorandum to secure investments in Eco-Gen, and establishing websites for both companies.  The Enterprise made numerous uses of the mail, private or commercial interstate carriers, or wire, radio, or television communications in interstate commerce, transmitted money and securities in interstate commerce, and induced interstate travel, in violation of 18 U.S.C. § 1961, *et seq.*, and 18 U.S.C. §§ 1341, 1343, and 2314, as described in the following paragraphs.

22.     On or about March 23, 2009, by mail, private or commercial interstate carrier, or wire, radio, or television communication in interstate commerce, the Enterprise filed articles of incorporation for Eco-Gen with the Nevada Secretary of State.  Every year thereafter, by mail, private or commercial interstate carrier, or wire, radio, or television communication in interstate commerce, the Enterprise filed with the Nevada Secretary of State an annual list of Eco-Gen's officers and directors.

23.     On or about November 9, 2012, by mail, private or commercial interstate carrier, or wire, radio, or television communication in interstate commerce, the Enterprise caused Eco-Gen to register to do business in California.

24.     On or about June 13, 2013, by mail, private or commercial interstate carrier, or wire, radio, or television communication in interstate commerce, the Enterprise caused Eco-Gen to apply for a trademark for the term "JouleBox," referring to it in the application as a "hybrid wind-powered and solar-powered electricity generator."

25.     On or about August 1, 2013, the Enterprise, through attorneys in Washington, D.C., issued a private placement memorandum by which the Enterprise sought to finance its activities by selling $25 million worth of stock.  In connection with the scheme, the Enterprise distributed to Plaintiffs a financial *pro forma* which projected revenue of $8.7 million in 2015, growing to $29 million in 2017, and profits of $3.6 million in 2015, growing to $11.9 million in 2017.  On information and belief, in addition to Plaintiffs, Defendants have solicited investments from numerous other persons.

26.      On November 4, 2013, Paul Noe, acting on behalf of the Enterprise, prepared "Bank Wire Instructions" to be used to make wire transfers of money in

interstate commerce, to Eco-Gen's bank account at Bank of America, N.A., Van Nuys, California  91405, account no. xxxxxxxx9291 ("Account No. 9291").

27.     On March 21, 2014, by mail, private or commercial interstate carrier, or wire, radio, or television communication in interstate commerce, Paul Noe, acting on behalf of the Enterprise, applied to the U.S. Patent and Trademark Office ("USPTO") for a patent for the JouleBox.  Paul Noe, as purported inventor, assigned the purported intellectual property for the JouleBox to Licia Noe, as trustee for the Bellagio Trust.

28.     In reasonable reliance on the Enterprise's false statements, the Beckers jointly purchased 25,000 shares of stock in Eco-Gen.  On or about March 30, 2015, by mail, private or commercial interstate carrier, or wire, radio, or television communication in interstate commerce, the Enterprise delivered a Subscription Agreement and Private Placement Memorandum dated August 1, 2013 to the Beckers, by which the Enterprise offered to sell the Beckers 25,000 shares of Eco-Gen stock for a purchase price of $25,000.  The Beckers reasonably relied on the Enterprise's false statements and scheme or artifice to defraud.  On March 30, 2015, following the wire transfer instructions prepared and provided by the Enterprise, the Beckers transferred $25,000 to Eco-Gen's Account No. 9291, which payment the Enterprise took or received by mail, private or commercial interstate carrier, or wire, radio, or television communication in interstate commerce, in violation of 18 U.S.C. §§ 1343 and 2314.  On April 9, 2015, Otey informed John Becker by email, *i.e.*, by wire or radio communication in interstate commerce, that "the stock certificate and the signed paperwork should go out today."  On or about April 16, 2015, by mail, private or commercial interstate carrier, or wire, radio, or television

communication in interstate commerce, the Enterprise delivered to the Beckers in Maryland a certificate for 25,000 shares of Eco-Gen stock.

29.     OPEX identifies itself as the U.S. distributor for the JouleBox and the U.S. marketing company for Eco-Gen.  Warren is the owner and managing member of OPEX. OPEX and Warren joined the Enterprise in its scheme or artifice to defraud.  OPEX and Warren recruited other persons to serve as sales representatives to sell the JouleBox to businesses and consumers.

30.     In reliance on the Enterprise's false statements, John Becker agreed to serve as a sales representative for OPEX for the Washington, D.C. / Baltimore area.  The Enterprise knew and intended that John Becker would innocently relay their false statements about the JouleBox to others.  John Becker, believing the Enterprise's statements about the JouleBox to be true, made Sersen aware of the Enterprise's claims about the JouleBox.  The Enterprise published its false claims about the JouleBox on the Eco-Gen and OPEX websites, intending that the claims and websites would be publicized by wire, radio, or television communications in interstate commerce.  In early 2015, Sersen reviewed the Eco-Gen and OPEX websites publishing the Enterprise's claims.

31.     On or about May 30, 2015, Environmental Design & Resource Center, LLC ("EDRC"), in reliance on the Enterprise's false claims about the JouleBox, entered into a written Lease-Purchase Agreement with OPEX, to purchase a 60 kilowatt JouleBox for the total price of $329,995.00.  The Lease-Purchase Agreement called for EDRC to pay a deposit of $151,385.00 to OPEX to be made by wire transfer to OPEX's account at Wells Fargo Bank, N.A., San Francisco, California, account no. xxxxxx5334 ("Account No.

5334").  Pursuant to a side agreement with EDRC, John Becker and Joan Becker agreed to contribute one-third of the deposit ($50,461), and John Becker agreed to forego a commission from OPEX (allowing the purchase price to be reduced to $302,770.00), and, with ASG, pay the balance of the purchase price.  On June 1, 2015, following the wire transfer instructions prepared by OPEX and Warren, EDRC transferred $151,385.00 to OPEX's Account No. 5334, which payment the Enterprise took or received by mail, private or commercial interstate carrier, or wire, radio, or television communication in interstate commerce, in violation of 18 U.S.C. §§ 1343 and 2314.

32.     The Lease-Purchase Agreement required that within four months, *i.e.*, by September 30, 2015, OPEX would deliver and place into operation a working JouleBox at EDRC's location in Jessup, Maryland.

33.     On July 28, 2015, as part of the Enterprise's continuing scheme or artifice to defraud Plaintiffs, Paul Noe in California communicated with Sersen and Becker in Maryland, by a video conference call using wire, radio, or television communication in interstate commerce, in which Paul Noe induced Sersen to travel from Maryland to Eco-Gen's office in Van Nuys, California, where Paul Noe claimed Sersen would be able to observe the purported JouleBox prototype and Eco-Gen's manufacturing facility.  Sersen traveled to California in August 2015.  On arrival, Sersen was shown a device that Defendants claimed was a prototype of a JouleBox, but was told that it was not possible to visit the manufacturing facility.  By inducing Sersen to travel to California, the Enterprise violated 18 U.S.C. § 2314, by lulling him into believing that a working JouleBox would be manufactured and delivered soon.

34.     On or about September 12, 2015, by mail, private or commercial interstate carrier, or wire, radio, or television communication in interstate commerce, OPEX, EDRC, and ASG executed an amended Lease-Purchase Agreement to substitute ASG for EDRC as the contract purchaser.

35.     On or about September 19, 2015, by mail or private or commercial interstate carrier, the Enterprise delivered to Sersen stock certificate 1231, representing 25,000 shares of stock in Eco-Gen, provided by Eco-Gen as an incentive to ASG as an early adopter of the JouleBox.

36.     Under the Lease-Purchase Agreement, OPEX was obligated to pay all costs and perform all design, permitting, and construction work required to render the JouleBox operational at ASG's facility in Jessup, Maryland.  ASG performed design and permitting work on behalf of OPEX, for which ASG was entitled to be paid under the Lease-Purchase Agreement.  The value of such services was $6,357.50, which amount remains unpaid as of this date.

37.     On December 4, 2015, as part of the Enterprise's continuing scheme or artifice to defraud Plaintiffs, Warren sent Sersen an email, using wire, radio, or television communication in interstate commerce, claiming that a test had been run on a prototype JouleBox, and claiming that the "test was run for 4 or 5 days and confirms . . . that the generator produced a steady 20 kW and the battery stayed at full power throughout the test period."  The intent of that email was to lull Sersen into believing that Defendants could deliver a JouleBox that actually performed as promised and persuade Sersen to not cancel the Lease-Purchase Agreement.

38.     In early March 2016, after the Enterprise had missed its deadline for delivering a JouleBox by six months, and Plaintiffs received reports that a potential financial backer of Eco-Gen had withdrawn, Plaintiffs lost confidence in the Enterprise's ability to deliver a JouleBox.

39.     On March 2, 2016, Sersen sent a letter to Warren and OPEX, with copies to Eco-Gen, Paul Noe, Otey, and Hamilton, demanding that OPEX refund the $151,385.00 deposit, and reimburse the $6,357.50.  On March 4, 2016, Sersen sent an email to Warren, with a copy to Paul Noe, Otey, and Hamilton, demanding the immediate return of the $151,385.00 deposit and payment of $6,357.50 for services rendered by ASG.

40.     In response, on March 7, 2016, as part of the Enterprise's continuing scheme or artifice to defraud Plaintiffs, Warren sent Sersen an email, using wire, radio, or television communication in interstate commerce, in which Warren attempted to lull Sersen into not pursuing legal action against OPEX and Eco-Gen and the other defendants.  Warren stated in that email:

> I met with the management of ECO-GEN Energy, Inc. today to discuss your request for a refund.  They have agreed to handle your request and global release of all parties including Operating Expense Consulting, LLC. Their attorneys will contact you with the necessary paperwork and timelines.

Under the terms of the written Lease-Purchase Agreement, ASG has an absolute right to an immediate refund directly from OPEX.  Warren's and OPEX's failure to deliver such a refund, together with their involvement of the management of Eco-Gen, confirms that the Defendants were conspiring together as an Enterprise on the fraudulent scheme.

41.     To date, Plaintiffs have not received a refund of the deposit, and the Enterprise has not responded to Plaintiffs' demands.

## Count I – Violations of RICO, 18 U.S.C. § 1962(c)

42.     Plaintiffs reallege and incorporate herein preceding paragraphs 1 through 41.

43.     At all relevant times, Plaintiffs were persons within the meaning of 18 U.S.C. § 1964(c).

44.     At all relevant times, Defendants were persons within the meaning of 18 U.S.C. § § 1961(3) and 1962(c).

45.     Defendants are a group of persons associated together in fact for the purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint.   Defendants have perpetrated, and continue to perpetrate, a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use a spurious security or other article, through a litany of illegal acts, including mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), receipt of interstate transfers of money taken by fraud (18 U.S.C. § 2314), and inducement of interstate travel by a victim of fraud (18 U.S.C. § 2314).  Defendants have organized their criminal enterprise into a multistate unit operating across state lines.

46.     Defendants constitute an associated-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  Each of the Defendants participated in the operation or management of the Enterprise.

47.     At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).

48.     Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), made use of the mail, private or commercial interstate carriers, or wire, radio, or television communications in interstate commerce, transmitted money and securities in interstate commerce, and induced interstate travel, in violation of 18 U.S.C. § 1961, *et seq.*, and 18 U.S.C. §§ 1341, 1343, and 2314, as follows:

(a)     On or about March 23, 2009, the Enterprise filed articles of incorporation for Eco-Gen with the Nevada Secretary of State.  Every year thereafter, the Enterprise filed with the Nevada Secretary of State an annual list of Eco-Gen's officers and directors.

(b)     On or about November 9, 2012, the Enterprise caused Eco-Gen to register to do business in California.

(c).     On or about June 13, 2013, the Enterprise caused Eco-Gen to apply for a trademark for the term "JouleBox," referring to it in the application as a "hybrid wind-powered and solar-powered electricity generator."

(d)     On or about August 1, 2013, the Enterprise, through attorneys in Washington, D.C., issued a private placement memorandum, by which the Enterprise sought to finance its activities by selling $25 million worth of stock.

(e)     On November 4, 2013, the Enterprise prepared "Bank Wire Instructions" to be used to make wire transfers of money in interstate commerce, to Eco-Gen's bank account at Bank of America, N.A., in Van Nuys, California, Account No. 9291.

(f)     On March 21, 2014, Paul Noe, acting on behalf of the Enterprise, applied to the USPTO for a patent for the JouleBox.  Paul Noe filed the patent application knowing that the JouleBox was a fraud.  Paul Noe's purpose in filing the application was to enable the Enterprise to use the phrase "patent pending" in marketing materials.

(g)     On or about March 30, 2015, the Enterprise delivered a Subscription Agreement and Private Placement Memorandum dated August 1, 2013 to the Beckers, offering to sell the Beckers 25,000 shares of Eco-Gen stock for a purchase price of $25,000.00.

(h)     On March 30, 2015, following the wire transfer instructions prepared and provided by the Enterprise, the Beckers transferred $25,000.00 to Eco-Gen's Account No. 9291.

(i)     On April 9, 2015, Otey informed John Becker by email that "the stock certificate and the signed paperwork should go out today."

(j)     On or about April 16, 2015, the Enterprise delivered to the Beckers in Maryland a certificate for 25,000 shares of Eco-Gen stock.

(k)     The Enterprise published its false claims about the JouleBox on the Eco-Gen and OPEX websites.  In early 2015, Sersen reviewed the Eco-Gen and OPEX websites publishing the Enterprise's claims.

(l)     On or about May 30, 2015, by exchange of emails, EDRC, in reliance on the Enterprise's false claims about the JouleBox, entered into a written Lease-Purchase Agreement with OPEX, to purchase a 60 kilowatt JouleBox for the total price of $329,995.00.  The Lease-Purchase Agreement called for EDRC to pay a deposit of $151,385.00 to OPEX to be made by wire transfer to OPEX's account at Wells Fargo Bank, N.A. in  San Francisco, California, Account No. 5334.

(m)     On June 1, 2015, following the wire transfer instructions provided by the Enterprise, EDRC transferred $151,385.00 to OPEX's Account No. 5334.

(n)     The Lease-Purchase Agreement required that OPEX would deliver and place into operation a working JouleBox at EDRC's location in Jessup, Maryland.

(o)     On July 28, 2015, Paul Noe in California communicated with Sersen and Becker in Maryland, by a video conference in which Paul Noe induced Sersen to travel from Maryland to Eco-Gen's office in Van Nuys, California, where Paul Noe claimed Sersen would be able to observe the purported JouleBox prototype, and Eco-Gen's manufacturing facility.

(p)     Sersen was induced to travel to California in August 2015.  On arrival, Sersen was shown a device that Defendants claimed was a prototype of a JouleBox, but was told that it was not possible to visit the manufacturing facility.

(q)     On or about September 19, 2015, the Enterprise delivered to Sersen stock certificate 1231, representing 25,000 shares of stock in Eco-Gen.

(r)     On December 4, 2015, the Enterprise sent Sersen an email claiming that a test had been run on a prototype JouleBox, and claiming that the "test was run for 4 or 5 days and confirms . . . that the generator produced a steady 20 kW and the battery stayed at full power throughout the test period."  The intent of that email was to lull Sersen into believing that Defendants could deliver a JouleBox that actually performed as promised and persuade Sersen to not cancel the Lease-Purchase Agreement.

(s)     On March 7, 2016, the Enterprise sent Sersen an email, attempting to lull Sersen into not pursuing legal action against OPEX, Eco-Gen and the other Defendants.

49.     Plaintiffs were injured in their business and property by reason of the Defendants' violations of 18 U.S.C. § 1962(c).  The injuries to Plaintiffs caused by the Defendants' RICO violations include but are not limited to the $151,385.00 purchase deposit paid by ASG, the $6,357.50 value of services that ASG rendered to OPEX for which ASG has not been paid, the $25,000.00 that the Beckers paid for 25,000 shares of Eco-Gen stock, travel expenses, and disruption of Plaintiffs' business, including substantial loss and diversion of time of key personnel.

50.     The injuries to Plaintiffs were a direct, proximate, and reasonably foreseeable result of the Defendants' violations of 18 U.S.C. § 1962.

51.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from the Defendants.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in the amount of $182,742.50, trebled to $548,227.50, attorneys' fees, costs, and such other and further relief as the Court may deem proper and just.

### Count II – Conspiracy to Violate RICO, 18 U.S.C. § 1962(d)

52.      Plaintiffs reallege and incorporate herein preceding paragraphs 1 through 51.

53.      The Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed together and with others to violate 18 U.S.C. § 1962(c) by engaging racketeering activity as described above, in violation of 18 U.S.C. § 1962(d).

54.      Upon information and belief, the Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity.  This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

55.      Upon information and belief, the Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

56.     Each Defendant knew about and agreed to facilitate the Enterprise's scheme to obtain property from Plaintiffs.  It was part of the conspiracy that the Defendants and their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth in the preceding paragraphs.

57.     As a direct and proximate result of the Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their property and business.  The injuries to Plaintiffs caused by the Defendants' RICO violations include but are not limited to the $151,385.00 purchase deposit paid by ASG, the $6,357.50 value of services that ASG rendered to OPEX for which ASG has not been paid, the $25,000.00 that the Beckers paid for 25,000 shares of Eco-Gen stock, travel expenses, and disruption of Plaintiffs' business, including substantial loss and diversion of time of key personnel.

58.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from the Defendants.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in the amount of $182,742.50, trebled to $548,227.50, attorneys' fees, costs, and such other and further relief as the Court may deem proper and just.

### Count III – Fraud

59.     Plaintiffs reallege and incorporate herein preceding paragraphs 1 through 58.

60.     Defendants made false representations to the Plaintiffs regarding the JouleBox, which induced ASG to pay the $151,385.00 purchase deposit, induced ASG to perform $6,357.50 worth of architectural and engineering services on behalf of OPEX, and induced the Beckers to pay $25,000.00 for 25,000 shares of Eco-Gen stock, induced Sersen to incur expenses to travel to California, and induced Plaintiffs to suffer other losses from disruption of Plaintiffs' business, including substantial loss and diversion of time of key personnel.

61.     The representations made by Defendants were false, were made with the purpose of inducing the Plaintiffs to suffer the damages and losses described in the preceding paragraph, and with the intent to defraud the Plaintiffs.  Defendants knew, or should have known, that their representations were false.

62.     Plaintiffs had a right to rely on Defendants' representations, and Plaintiffs' reliance was reasonable under the circumstances, because Defendants were represented by reputable attorneys and accountants and appeared to follow appropriate corporate procedures and requirements.

63.     As a direct and proximate result of their reliance on Defendants' false representations, Plaintiffs have suffered damages in the amount of approximately $182,742.50.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in the amount of $182,742.50, punitive damages of $365,485.00, costs, and such other and further relief as the Court may deem proper and just.

## Count IV – Civil Conspiracy

64.     Plaintiffs reallege and incorporate herein preceding paragraphs 1 through 63.

65.     The Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to defraud Plaintiffs as described in the preceding paragraphs.

66.     Upon information and belief, the Defendants knew that they were engaged in a conspiracy to defraud Plaintiffs.

67.     As a direct and proximate result of the Defendants' conspiracy to defraud Plaintiffs, Plaintiffs have been injured in their property and business.  The injuries to Plaintiffs caused by the Defendants' conspiracy to defraud include but are not limited to the payment of the $151,385.00 purchase deposit, the $6,357.50 value of services that ASG rendered to OPEX for which ASG has not been paid, the $25,000.00 that the Beckers paid for 25,000 shares of Eco-Gen stock, travel expenses, and disruption of Plaintiffs' business, including substantial loss and diversion of time of key personnel.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages in the amount of $182,742.50, punitive damages of

$365,485.00, costs, and such other and further relief as the Court may deem proper and just.

## Count V – Breach of Contract

68.     In the alternative to Counts I through IV, Plaintiffs EDRC and ASG allege as follows.

69.     Plaintiffs reallege and incorporate herein preceding paragraphs 1 through 15.

70.     On or about May 30, 2015, EDRC entered into a written Lease-Purchase Agreement with OPEX, to purchase a 60 kilowatt JouleBox for the total price of $329,995.00.  The Lease-Purchase Agreement called for EDRC to pay a deposit of $151,385.00 to OPEX to be made by wire transfer to OPEX's account at Wells Fargo Bank, N.A., San Francisco, California, Account No. 5334.

71.     On June 1, 2015, following the wire transfer instructions prepared by OPEX and Warren, EDRC transferred $151,385.00 to OPEX's Account No. 5334.

72.     The Lease-Purchase Agreement required that within four months, *i.e.*, by September 30, 2015, OPEX would deliver and place into operation a working JouleBox at EDRC's location in Jessup, Maryland.

73.     Under the Lease-Purchase Agreement, OPEX was obligated to pay all costs and perform all design, permitting, and construction work required to render the JouleBox operational at ASG's facility in Jessup, Maryland.  ASG performed design and permitting work on behalf of OPEX, for which ASG was entitled to be paid under the

Lease-Purchase Agreement.  The value of such services was $6,357.50, which amount remains unpaid as of this date.

74.     On or about September 12, 2015, by mail, private or commercial interstate carrier, or wire, radio, or television communication in interstate commerce, OPEX, EDRC, and ASG executed an amended Lease-Purchase Agreement to substitute ASG for EDRC as the contract purchaser.

75.     The JouleBox was not delivered by September 30, 2015.

76.     As a result of OPEX's failure to deliver the JouleBox, ASG was unconditionally entitled to a refund of the deposit.  ASG demanded a refund on or about March 2, 2016.

77.     EDRC and ASG have satisfied all conditions precedent under the Lease-Purchase Agreement.

78.     OPEX materially breached the Lease-Purchase Agreement, by failing to deliver the JouleBox, and having failed to deliver, by failing and refusing to refund the deposit.

79.     ASG has been damaged by OPEX's breach, in the amount of $151,385.00.

WHEREFORE, Plaintiffs EDRC and ASG demand judgment against Defendant OPEX, for compensatory damages in the amount of $151,385.00, pre-judgment interest, costs, and such other and further relief as the Court may deem proper and just.

_____   /S/   _____
John F. Dougherty (Bar No. 25369)
*jdougherty@kg-law.com*
Louis P. Malick (Bar No. 11166)
*lmalick@kg-law.com*
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
Telephone:  410-752-6030
Facsimile:  410-539-1269

*Attorneys for Plaintiff*