IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **JOHN BECKER,** *et al.*<br><br>                    Plaintiffs<br>v.<br><br>**RALPH WARREN,** *et al.*<br><br>                    Defendants | Case No.: 1:18-cv-00931-BPG |

### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs John Becker and Joan Becker, Stanley J. Sersen, Environmental Design & Resource Center, LLC, and Architectural Support Group, Inc., by their undersigned attorneys, pursuant to Fed.R.Civ.P. 56, move for partial summary judgment against Defendants Ralph Warren ("Warren") and Operating Expense Consulting, LLC ("OPEX") on Count III of the Amended Complaint (ECF No. 35), and against Defendant Operating Expense Consulting, LLC on Count V of the Amended Complaint, and state as follows.

### I.  STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

There is no genuine dispute as to the following facts.  Defendants Warren and OPEX have admitted most of the material facts in their answers (ECF No. 39; ECF No. 48), and Plaintiffs John Becker and Stan Sersen have verified all of the following facts. *See* Exhibits J and K attached hereto.

1. Defendants Warren and OPEX have admitted that on May 30, 2015, EDRC entered into a written Lease-Purchase Agreement with OPEX, to purchase a 60 kilowatt Joulebox for the total price of $329,995.00.  (ECF No. 35, ¶ 78; ECF No. 39, ¶ 78; ECF No. 48, ¶ 78.)  A true and correct copy of the Lease-Purchase Agreement is attached hereto as Exhibit A.  Also on May 30, 2015, EDRC and OPEX amended the Lease-Purchase Agreement.  A true and correct copy of the First Amendment is attached hereto as Exhibit B.  Defendants Warren and OPEX have admitted that on September 12, 2015, OPEX, EDRC, and ASG executed a Second Amendment to the Lease-Purchase Agreement substituting ASG for EDRC as the contract purchaser.  (ECF No. 35, ¶ 82; ECF No. 39, ¶ 82; ECF No. 48, ¶ 82.)  A true and correct copy of the Second Amendment is attached hereto as Exhibit C.  Hereafter, the Lease-Purchase Agreement and amendments are referred to collectively as the Purchase Agreement.

2. The Purchase Agreement called for EDRC to pay a deposit of $151,385.00 by wire transfer to OPEX's account at Wells Fargo Bank, N.A., San Francisco, California, Account No. 5334.  *See* Exs. A & B.  Defendants Warren and OPEX have admitted that on June 1, 2015, following the wire transfer instructions prepared by OPEX and Warren, EDRC transferred $151,385.00 to OPEX's Account No. 5334.  (ECF No. 35, ¶ 79; ECF No. 39, ¶ 79; ECF No. 48, ¶ 79.)

3. The Purchase Agreement required that by September 30, 2015, OPEX would deliver and place into operation a working Joulebox at EDRC's location in Jessup, Maryland.  (ECF No. 35, ¶ 80; ECF No. 39, ¶ 80; ECF No. 48, ¶ 80.)  The Purchase Agreement provides that time is of the essence.  *See* Ex. A at ¶ 26.  Defendants Warren

and OPEX have admitted that a Joulebox was not delivered by September 30, 2015, or ever.  (ECF No. 35, ¶ 83; ECF No. 39, ¶ 83; ECF No. 48, ¶ 83.)

4. As a result of OPEX's failure to deliver the Joulebox, ASG was unconditionally entitled to a refund of the deposit.  Plaintiffs demanded a refund on or about March 2, 2016.  OPEX has never refunded any of Plaintiffs' deposit payment.

5. Plaintiffs also suffered incidental and consequential damages caused by OPEX's breach of contract, for money Plaintiffs spent for design, permitting, and construction work required to install and render the Joulebox operational at ASG's facility in Jessup, Maryland, for which OPEX was ultimately contractually responsible. *See* Ex. A at ¶¶ 1, 5, 17.

6. As shown on the Monthly Invoice attached hereto as Exhibit D, ASG incurred costs of $3,675.00 for services to design, engineer, and plan the installation of the Joulebox and its connection to the local electrical grid.

7. As shown on the letter agreement and invoices attached hereto as Exhibit E, ASG paid $3,360.00 to SRBR Engineers for electrical design and engineering services for the installation of the Joulebox and its connection to the local electrical grid.

8. As shown on the Design Agreement attached hereto as Exhibit F, ASG paid $500.00 to LandArt Associates, LLC for landscape and hardscape design services for the installation of the Joulebox.

9. As shown on the letter agreement and invoices attached hereto as Exhibit G, ASG paid $882.50 to Pennoni Associates Inc. for planning services to secure the approval of Howard County for the installation of the Joule Box.

10. As shown on the check record attached hereto as Exhibit H, ASG paid $200.00 to Howard County for planning approval for the installation of the Joule Box.

11. As shown on the letter agreement and invoices attached hereto as Exhibit I, John Becker paid $300.00 to Holthouse Carlin & Van Tright LLP for tax credit consulting services related to the purchase and installation of the Joule Box.

12. Plaintiffs suffered incidental and consequential damages in the total amount of $8,917.50.

13. OPEX's failure to deliver the Joulebox, and its subsequent failure to refund Plaintiff's deposit, were a breach of contract, which caused Plaintiffs to suffer direct damages of $151,385.00, and incidental and consequential damages of $8,917.50, for total damages of $160,302.50.

14. Defendants Warren and OPEX have admitted that OPEX was a distributor for the Joulebox, and that information regarding the Joulebox was presented on the OPEX website. (ECF No. 35, ¶¶ 35-36; ECF No. 39, ¶¶ 35-36; ECF No. 48, ¶¶ 35-36.) Defendants Warren and OPEX have admitted that Ralph Warren is the owner and managing member of OPEX. (ECF No. 35, ¶¶ 12, 35; ECF No. 39, ¶¶ 12, 35; ECF No. 48, ¶¶ 12, 35.)

15. In the Purchase Agreement, OPEX and Warren promised that OPEX was capable of delivering a Joulebox that, using no external source of energy, "generates 60 kW per hour, 24 hours per day, 365 days per year" for a useful life of 20.9 years. *See* Ex. A. That statement was false. Warren and OPEX knew that statement was false or made it with reckless disregard for the truth, and made it with the intent and for the purpose of

defrauding Plaintiffs and fraudulently inducing them to enter into the Purchase Agreement.   Warren's and OPEX's fraudulent intent can be inferred from circumstantial evidence.

16.     Defendants Warren and OPEX have admitted that on December 4, 2015, Warren sent Sersen an email claiming that a test had been run on a prototype Joulebox, and claiming that the "test was run for 4 or 5 days and confirms . . . that the generator produced a steady 20 kW and the battery stayed at full power throughout the test period." (ECF No. 35, ¶ 43; ECF No. 39, ¶ 43; ECF No. 48, ¶¶ 43.)  The only reasonable inference and conclusion that can be drawn from December 4, 2015 email is that Warren and OPEX intended to induce Sersen into believing that Defendants could deliver a Joulebox that actually performed as promised and to persuade Sersen to not cancel the Lease-Purchase Agreement.

17.     Warren's and OPEX's representations were knowingly false, or were made with reckless disregard for the truth.  Warren represented to Plaintiffs that he had personally observed a Joulebox working as described in the Purchase Agreement, but that representation was false, because the Joulebox cannot work as described in the Purchase Agreement.  Warren has never seen a Joulebox work as described in the Purchase Agreement, and Warren and OPEX have never delivered a Joulebox that works as described in the Purchase Agreement.

18.     Plaintiffs reasonably relied on the truth of the statements by Warren and OPEX, because Warren claimed to have personally seen the Joulebox work as described, OPEX was duly organized under South Dakota law, and Warren was a certified public

accountant licensed by the State of South Dakota.  Neither Sersen nor Becker were electrical engineers so they lacked detailed knowledge about the subject matter of the claims asserted by Warren and OPEX.

19.     Thereafter, however, a number of facts caused Plaintiffs to conclude that Warren's and OPEX's statements were false.  When Sersen visited California and asked to inspect the facility where the Joulebox was manufactured, the Eco-Gen representatives were evasive and stated that Sersen could not visit the facility because it was closed, even though they had known before Sersen traveled to California that the inspection was the purpose of the trip.  When Plaintiffs engaged SRBR Engineers, an electrical engineer, to design the installation of the Joule Box, SRBR declined to independently warrant that the installed Joule Box would generate the electrical power output represented by OPEX and Warren.  Finally, on March 1, 2016, Mr. Sersen received a telephone call from Keith Fitzgerald, who informed Mr. Sersen that  Paul Delanoe, the owner of Eco-Gen and purported inventor of the Joulebox, was formerly named Paul Howe Noe II, who had been convicted of fraud, and that Julia Otey of Eco-Gen also had been sued for fraud.  All of those facts caused the Plaintiffs to investigate and conclude that they had been fraudulently deceived by Warren and OPEX.

20.     Plaintiffs suffered damages of $160,302.50 as a result of Warren's and OPEX's fraud and material misrepresentation.

## II.  STANDARD OF REVIEW

Fed. R. Civ. P. 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "[T]he mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (accord).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986)).  Failure to demonstrate a genuine issue of material fact for trial will result in summary judgment.  *Strag v. Board of Trustees*, 55 F.3d 943, 951 (4th Cir. 1995).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Henry v. Purnell,* 652 F.3d 524, 548 (4th Cir. 2011)).

## III.  ARGUMENT

### A.  Damages for Breach of Contract

For a seller's breach of a contract for the sale of goods, a plaintiff buyer is entitled to recover direct damages for so much of the purchase price as has been paid.  *See* Md. Code Ann., Comm. Law § 2-711(1).  Additionally, a buyer is entitled to incidental and consequential damages for expenses reasonably resulting from the seller's breach.  *See* Md. Code Ann., Comm. Law § 2-715.  As set forth above, OPEX's breach of contract caused Plaintiffs to suffer direct, incidental, and consequential damages in the amount of $160,302.50

In a breach of contract claim arising under Maryland law, Maryland law governs the award of pre-judgment interest.  *See, e.g., Sagent Tech., Inc. v. Micros Sys., Inc.*, 276 F. Supp. 2d 464, 469-70 (D. Md. 2003).  Pre-judgment interest should be awarded as a matter of right where "the contract requires payment of a sum certain on a date certain." *Crystal v. W. & Callahan, Inc.*, 328 Md. 318, 343 (1992).  The contractual obligation to pay and the amount due must have "become certain, definite, and liquidated by a specific date prior to judgment."  *Buxton v. Buxton*, 363 Md. 634, 656 (2001) (quoting *First Va. Bank v. Settles*, 322 Md. 555, 564 (1991)).  Maryland courts typically award pre-judgment interest as a matter of right in "cases where the money claimed has been actually used by the other party."  *I. W. Berman Props. v. Porter Bros., Inc.*, 276 Md. 1, 16-17 (1975).  Even if pre-judgment interest is not available as a matter of right in a breach of contract action, the trial court may award pre-judgment interest within its

discretion.  *See Buxton*, 363 Md. at 657; *Affiliated Distillers*, 213 Md. at 516.  Under Maryland law, the relevant pre-judgment interest rate is six percent per year.  *See* Md. Const. art. III, § 57.

OPEX received Plaintiffs' deposit on June 5, 2015, and has had the use of the money since that date.  OPEX admits that it failed to deliver the Joulebox on September 30, 2015.  Plaintiffs demanded a refund on March 2, 2016, and OPEX admits that it owes a refund.  March 2, 2016 is the latest date when the refund was due, and pre-judgment interest should be imposed starting on that date.  From March 2, 2016 to March 2, 2020, the Court should award pre-judgment interest in the amount of $9,618.15 per year[1], for a total amount due of $198,775.10[2] as of March 2, 2020.  For the period after March 2, 2020, until the date of judgment, the Court should award additional pre-judgment interest of $26.35 per day.

In cases asserting state law breach of contract claims under diversity jurisdiction, federal law governs the calculation of post-judgment interest.  *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999).  A prevailing plaintiff in such a case is entitled to an award of post-judgment interest "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).

---

[1] $160,302.50 x 6% = $9,618.15 per year.
[2] $9,618.15 x 4 years = $38,472.60.  $160,302.50 + $38,472.60 = $198,775.10.

On Count V of their Amended Complaint, Plaintiffs are entitled to a judgment against OPEX, for compensatory damages in the amount of $160,302.50, plus pre-judgment interest in the amount of $38,472.60 from March 2, 2016 to March 2, 2020, plus $26.35 per day after March 2, 2020, plus post-judgment interest at the legal rate.

### B.  Compensatory and Punitive Damages for Fraud

This case involves more than a run-of-the-mill breach of a contract for the sale of goods.  Warren and OPEX fraudulently represented that they had the ability to deliver a machine that did not and does not exist, and thereby obtained $151,385 from Plaintiffs, and caused Plaintiffs to suffer total damages of $160,302.50.  Warren and OPEX were selling a lie.  That misrepresentation makes them liable to the Plaintiffs for fraud. Plaintiffs are entitled to summary judgment on Count III of the Amended Complaint, for compensatory and punitive damages from Warren and OPEX.

In *Saint Annes Dev. Co., LLC v. Trabich*, 737 F. Supp. 2d 517 (D. Md. 2010), this Court found the defendant liable for fraud, and awarded compensatory and punitive damages.  Judge Quarles's opinion sets forth the applicable law clearly and succinctly:

> To prove fraud, a plaintiff must show by clear and convincing evidence that: (1) the defendant made a false representation to the plaintiff, (2) the defendant knew the representation was false or made it with reckless indifference as to its truth, (3) the purpose of the misrepresentation was to defraud the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury resulting from the misrepresentation.  *Maryland Envtl. Trust v. Gaynor*, 370 Md. 89, 803 A.2d 512, 516 (Md. 2002) (quoting *Nails v. S & R Inc.*, 334 Md. 398, 639 A.2d 660, 668 (Md.1994)).

> Because fraud involves misrepresentation of a present or preexisting fact, a plaintiff must prove that the defendant did not intend to uphold the promise at the time it was made.  *See Levin v. Singer*, 227 Md. 47, 175 A.2d 423, 432 (Md. 1961).  Fraudulent intent can be inferred from circumstantial evidence. *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md.App. 97, 838 A.2d 404, 440 (Md.App. 2003).   In weighing such evidence, Maryland courts consider "the situation of the parties, the relations existing between them, the activity of the promisor in procuring the instrument, and the failure of the promisor to perform." *Tufts v. Poore*, 219 Md. 1, 147 A.2d 717, 722 (Md.1959).  "[A] failure or refusal to perform is strong evidence of an intent not to perform the promise at the time it was made ... [when] only a short period of time elapses between the making of the promise and the failure or refusal to perform it, and there is no change in the circumstances." *First Union*, 838 A.2d at 439 (quoting *Tufts*, 147 A.2d at 722).

*Saint Annes Dev. Co.*, 737 F. Supp. 2d at 527–28 (D. Md.), *aff'd in part, vacated in part sub nom. Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829 (4th Cir. 2011), *and on reconsideration in part*, No. CIV. WDQ-07-1056, 2012 WL 135281 (D. Md. Jan. 13, 2012).

    Judge Quarles's opinion in *Saint Annes Dev. Co.* also sets forth in concise form the standards for imposing punitive damages in a fraud case, which requires clear and convincing evidence that the defendant knew his statement was false and intended to deceive the plaintiff.  *Id.* at 532.  Judge Quarles, having found that the defendant had little ability to pay punitive damages, awarded the same amount that would be imposed as a criminal penalty for fraud.  *Id.* at 533.  In the instant case, Warren's and OPEX's conduct would fall under Md. Code Ann., Crim. Law § 7-104(b) (theft by deception), for which Criminal Law § 7-104(g)(1)(iii) imposes a maximum criminal penalty of $25,000.

On Count III of their Amended Complaint, Plaintiffs are entitled to a judgment against Warren and OPEX, for compensatory damages in the amount of $160,302.50, jointly and severally. Additionally, as a punishment and deterrent against similar future conduct, the Court should award punitive damages on Count III of the Amended Complaint against Warren and OPEX in the amount of $25,000 each, for a total judgment on Count III of $185,302.50, plus post-judgment interest at the legal rate.

## IV.  CONCLUSION

WHEREFORE, Plaintiffs respectfully request the Court to enter summary judgment in their favor, as follows:

On Count III, for Fraud, judgment in favor of all Plaintiffs jointly, and against Defendants Ralph Warren and Operating Expense Consulting, LLC, for compensatory damages in the amount of $160,302.50 jointly and severally, punitive damages in the amount of $25,000 each, post-judgment interest at the legal rate, and costs.

On Count V, for Breach of Contract, judgment in favor of all Plaintiffs jointly, and against Defendant Operating Expense Consulting, LLC, for compensatory damages in the amount of $160,302.50, pre-judgment interest in the amount of $38,472.60 from March 2, 2016 to March 2, 2020, plus $26.35 per day after March 2, 2020, post-judgment interest at the legal rate, and costs.

|  |  |
|---|---|
|  | Respectfully submitted: |
| Dated:  March 3, 2020 | /s/ *John F. Dougherty* |
|  | John F. Dougherty (Bar No. 25369) |
|  | Louis P. Malick (Bar No. 11166) |
|  | Kramon & Graham, P.A. |
|  | One South Street, Suite 2600 |
|  | Baltimore, Maryland 21202-3201 |
|  | Telephone:  410-752-6030 |
|  | Facsimile:  410-539-1269 |
|  | *jdougherty@kg-law.com* |
|  | *lmalick@kg-law.com* |
|  |  |
|  | *Attorneys for Plaintiffs* |

## **CERTIFICATE OF SERVICE**

I certify that on March 3, 2020, I filed this Motion for Summary Judgment via CM/ECF which caused a copy to be served on all counsel of record.

>/s/ *John F. Dougherty*
>John F. Dougherty