IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN BECKER, *et al.*, | * |
| Plaintiffs, | * |
| v. | *   Civil No.: BPG-18-931 |
| RALPH WARREN, *et al.*, | * |
| Defendants | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4. (ECF No. 61). Currently pending are plaintiffs' Motion for Partial Summary Judgment ("Motion") (ECF No. 82), defendants' Opposition to Defendant's Motion for Partial Summary Judgment ("Opposition") (ECF No. 84), and plaintiffs' Corrected Reply to defendants' Opposition to plaintiffs' Motion for Partial Summary Judgment ("Reply") (ECF No. 86). No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein, plaintiffs' Motion for Partial Summary Judgment (ECF No. 82) is DENIED.

**I.   BACKGROUND**

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is the defendants in this case. Scott v. Harris, 550 U.S. 372, 378 (2007). On or about November 18, 2013, defendant Operating Expense Consulting, LLC ("OPEX") entered a dealer agreement with Eco-Gen Energy,

Inc. ("Eco-Gen") to sell Eco-Gen Joulebox products ("Dealer Agreement"). (ECF No. 84-2). The Eco-Gen Joulebox was recommended by organizations and individuals. (ECF Nos. 84-4, 84-5). The Joulebox was also evaluated by PowerHouse Energy Americas. (ECF No. 84-6). On or about May 30, 2015, plaintiff Environmental Design & Resource Center, LLC ("ERDC") and defendant OPEX signed an OPEX PROS Lease-Purchase Agreement ("Purchase Agreement") for a 60-kilowatt ECO-GEN JB-60 Joulebox Hybrid Generator ("Joulebox"). (ECF No. 82-1). The Purchase Agreement lists defendant OPEX as the seller and plaintiff ERDC as the purchaser. (Id.) The price of the Joulebox is listed as $329,995.00. (Id.) The Purchase Agreement was amended twice, once to substitute plaintiff Architectural Support Group, Inc. ("ASG") in place of plaintiff ERDC as the purchaser and once to note that plaintiff John Becker would not collect his commission for the sale, reducing the down payment required. (ECF Nos. 82-2, 82-3). Plaintiff Becker acted as a sales representative for defendant OPEX but entered a side agreement with plaintiff ERDC to personally contribute to the down payment for Joulebox in question. (ECF No. 35, ¶ 36-37).

On or about June 1, 2015, plaintiffs sent a down payment of $151,385.00 to defendant OPEX, as specified in the Purchase Agreement. (ECF No. 35, ¶ 79; ECF No. 48, ¶ 79). In August 2015, plaintiff Stanley J. Sersen, a member of plaintiff ERDC and a shareholder and officer of plaintiff ASG, went to California to visit the Eco-Gen facility and view a Joulebox prototype. (ECF No. 84-3). The Joulebox was to be delivered and installed within four months of the execution of the Purchase Agreement (i.e., September 30, 2015), however, it was not delivered or installed by this date, nor has it ever been delivered. (ECF No. 35, ¶ 80, ¶ 83; ECF No. 48, ¶ 83). On or about March 2, 2016, plaintiff Sersen sent a letter to defendants Warren and OPEX

demanding a refund of the down payment of $151,385.00 in addition to related costs. (ECF No. 35, ¶ 45). The down payment was not refunded. (ECF No. 82, ¶ 4).

On March 30, 2018, plaintiffs filed suit against defendants in this court. (ECF No. 1). On June 18, 2018, plaintiffs filed an Amended Complaint, asserting five counts: 1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); 2) conspiracy to violate RICO, 18 U.S.C. § 1862(d); 3) fraud; 4) civil conspiracy; and 5) breach of contract. (ECF No. 35). Discovery has closed and plaintiffs now seek partial summary judgment with respect to two counts of the Amended Complaint: 1) Count III – Fraud; and 2) Count V - Breach of Contract. (ECF No. 82).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that

party will bear the burden of proof at trial, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment. Anderson, 477 U.S. at 252. Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact. Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001). Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party. Anderson, 477 U.S. at 252.

### III. DISCUSSION

#### A. Count III – Fraud

Plaintiffs move for summary judgment on their claim of fraud, arguing that defendants fraudulently represented to plaintiffs that defendants had the ability to deliver the Joulebox "that did not and does not exist." (ECF No. 82 at 10). Plaintiffs maintain that due to defendants' fraud,

4

plaintiffs are entitled to punitive damages of $25,000 per defendant in addition to economic damages. (Id. at 11-12). To establish fraud under Maryland law:[1]

> [A] plaintiff must show by clear and convincing evidence that: (1) the defendant made a false representation to the plaintiff, (2) the defendant knew the representation was false or made it with reckless indifference as to its truth, (3) the purpose of the misrepresentation was to defraud the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury resulting from the misrepresentation.

Saint Annes Dev. Co., LLC v. Trabich, 737 F. Supp. 2d 517, 528 (D. Md. 2010); see also Gross v. Sussex, Inc., 332 Md. 247, 257, 630 A.2d 1156, 1161 (1993). The second and third elements of a fraud claim require that the plaintiff prove that the defendant had "intent to deceive the other party," which is also known as scienter. Doe v. Prudential Ins. Co. of America, 860 F. Supp. 243, 250 (D. Md. 1993); see also Martens Chevrolet v. Seney, 292 Md. 328, 333, 439 A.2d 534, 537 (1982). "[S]ummary judgment is seldom appropriate" for fraud claims because of the heightened clear and convincing evidence standard and the requirement to prove the defendant's scienter. PPM America, Inc. v. Marriott Corp., 853 F. Supp. 860, 872 (D. Md. 1994); see also Gross, 332 Md. at 256, A.2d at 1160. Summary judgment may still be appropriate, however, if there are no material facts in dispute. Gross, 332 Md. at 257, A.2d at 1161.

Plaintiffs argue that defendants "made false representations about the Joulebox without any basis for believing the statements to be true, i.e., with reckless disregard for the truth." (ECF No.

---

[1] This court has jurisdiction over Count III – Fraud and Count V – Breach of Contract claims pursuant to both diversity and supplemental jurisdiction. See 28 U.S.C. § 1332; 28 U.S.C. § 1367. The contract in question specifies that it is governed by Maryland law. (ECF No. 82-1, ¶ 22). Additionally, because the court's jurisdiction over this matter is also based on diversity of citizenship, the court must apply Maryland law to issues of substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999) ("As a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule.").

86 at 4). Defendants claim that they received all information regarding the Joulebox from Eco-Gen and believed this information to be true in part because of independent testing and other documentation. (ECF No. 84 at 4). Defendants also point to the fact that plaintiffs interacted with Eco-Gen directly in California and therefore "satisfied themselves of the truth of Eco-Gen's representations" about the Joulebox. (Id. at 5).

While it is undisputed that plaintiffs never received the Joulebox, genuine issues of material fact exist regarding defendants' scienter. Defendants argue they believed that Eco-Gen could and would produce the Joulebox given the independent evaluation and the recommendations of organizations and individuals. (ECF Nos. 84-4, 84-5, 84-6). Additionally, defendants argue that plaintiffs had the opportunity to independently visit the Eco-Gen facility and did not rely solely on defendants for information about the Joulebox and its capabilities. (ECF No. 84 at 4). Accordingly, evidence of these independent evaluations and recommendations and plaintiff Sersen's visit to the Eco-Gen facility creates issues of material fact as to whether defendants knowingly and intentionally defrauded plaintiffs. Saint Annes Dev. Co., LLC, 737 F. Supp. 2d at 528. Plaintiffs have not offered any evidence that defendants knew these independent assessments were untrustworthy or inaccurate. Since defendants are the non-moving party, the court views all facts and reasonable inferences in the light most favorable to them. Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 587. Defendants have demonstrated that specific material facts exist regarding their scienter and whether they purposefully intended to defraud plaintiffs, allowing for the possibility that a reasonable jury could find in their favor. Anderson, 477 U.S. at 252; Celotex, 477 U.S. at 324. Accordingly, plaintiffs' motion for partial summary judgment on Count III – Fraud is denied.

B.  **Count V – Breach of Contract**

Plaintiffs argue that as a result of defendants' breach of contract, plaintiffs are entitled to direct damages for the down payment on the Joulebox in addition to incidental and consequential damages for plaintiffs' expenses that reasonably resulted from defendants' breach of contract. (ECF No. 82 at 8-10).  A breach of contract occurs when a party to the contract fails "to perform any promise that forms the whole or part of a contract." 23 Williston on Contracts § 63:1 (4th ed.).

Defendants maintain that because defendant OPEX acted as an agent for Eco-Gen, the disclosed principal, the defendants are not liable for the breach of contract or any resulting damages. (ECF No. 84 at 6-9). "The rule in Maryland is clear that 'if an agent fully discloses the identity of his principal to the third party, then, absent an agreement to the contrary, [the agent] is insulated from liability." Curtis G. Testerman Co. v. Buck, 340 Md. 569, 576, 667 A.2d 649, 653 (1995) (quoting A.S. Abell Co. v. Skeen, 265 Md. 53, 56, 288 A.2d 596, 597-98 (1972)). "An agency relationship may be created by written agreement or by conduct." Brooks v. Euclid Systems Corp., 151 Md. App. 487, 506, 827 A.2d 887, 897 (Md. Ct. Spec. App. 2002). Three characteristics are relevant in determining whether an agency relationship exists: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." Green v. H & R Block, Inc., 355 Md. 488, 503, 735 A.2d 1039, 1048 (1999). Yet, these three characteristics are not "mandatory elements," but "guiding considerations that 'should be viewed within the context of the entire circumstances of the transaction or relations.'" Bhambhani v. Innovative Health Solutions, Inc., No. RDB-19-0355, 2020 WL 673180, at *4 (D. Md. Feb. 11, 2020) (quoting Green, 355 Md. at 506, 735 A.2d at 1049). Additionally, the question of whether an agency relationship exists is

normally a question of fact and not a question of law unless "only one inference may be drawn from the evidence." Green, 355 Md. at 505, 735 A.2d at 1048.

Although defendants acknowledge that OPEX's Dealer Agreement with Eco-Gen names OPEX as an independent contractor rather than as an agent, they argue that an agency relationship existed due to the conduct of the parties. (ECF No. 84 at 6). Defendants offer evidence regarding the three characteristics or "guiding considerations" of an agency relationship. Bhambhani, 2020 WL 673180, at *4. First, defendant OPEX had the power to alter the legal relations of Eco-Gen since they sold plaintiffs the Joulebox on Eco-Gen's behalf. (ECF No. 84 at 9); see Restatement (Second) of Agency § 12 (Am. Law Inst. 1958) ("The exercise of this power [to alter the legal relations of the principal] may result . . . in divesting the principal of his interests in a thing, as where the agent sells the principal's goods."). Second, defendants argue that defendant OPEX's duty was to act primarily for the benefit of Eco-Gen because the Dealer Agreement allowed defendant OPEX to sell Jouleboxes provided only by Eco-Gen. (ECF No. 84 at 9; ECF No. 84-2). Third, defendants rely on the Dealer Agreement to show that Eco-Gen had the right to control defendant OPEX by setting forth required sales quotas and prohibiting any Joulebox sub-dealers without Eco-Gen's approval. (ECF No. 84 at 8; ECF No. 84-2 at 3-4).

Defendants, the non-moving party, have provided evidence that they may have been agents of Eco-Gen and, therefore, not liable for the breach of contract in this case. Plaintiffs, as the moving party, have the burden to demonstrate an absence of material facts, but have failed to do so. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc., F.2d at 1286. The evidence offered by defendants as to the three characteristics relevant to determining whether an agency relationship exist, when "viewed within the context of the entire circumstances of the transaction or relations," Bhambhani, 2020 WL 673180, at *4, creates a genuine issue of material fact precluding summary judgment.

Fed. R. Civ. P. 56(c). Accordingly, plaintiffs' motion for summary judgment on Count V – Breach of Contract is denied.[2]

## IV. **CONCLUSION**

For the foregoing reasons, plaintiffs' Motion for Partial Summary Judgment (ECF No. 82) is DENIED. A separate order will be issued.

November 17, 2020  /s/
Beth P. Gesner
Chief United States Magistrate Judge

---

[2] Given the court's rulings herein, plaintiffs' extensive discussion of damages (see ECF No. 82 at 8-11) need not be addressed at this stage.